**UNITED STATES v. NEW YORK, C. & ST.**
**L. RY. CO.**
No. 5375.

Circuit Court of Appeals, Seventh Circuit.
April 30, 1935.

Val Nolan, U. S. Atty., of Indianapolis, Ind., and James O. Tolbert, Sp. Asst. to U. S. Atty., of Washington, D. C.

Russell P. Harker, of Frankfort, Ind. (W. J. Stevenson, of Cleveland, Ohio, of counsel), for appellee.

Before SPARKS, FITZHENRY, and ALSCHULER, Circuit Judges.

FITZHENRY, Circuit Judge.

The government brought this action against the railway company for an alleged violation of an order of the Interstate Commerce Commission issued pursuant to the provisions of the Safety Appliance Acts, 45 USCA §§ 1 to 10. The order reads as follows: "It is ordered: That on and after September 1, 1910, on all railroads used in interstate commerce, whenever, as required by the Safety Appliance Act as amended March 2, 1903, *any train* is operated with power or train brakes, not less than 85 per cent of the cars of such train shall have their brakes used and operated by the engineer of the locomotive drawing such train, and all power-braked cars in every such train which are associated together with the 85 per cent shall have their brakes so used and operated." (Italics ours.)

The complaint alleges that the railway company, on April 21, operated a train consisting of thirteen cars drawn by locomotive engine No. 95, over its line of railroad from North yard to Belt Junction, at Indianapolis, Ind., when less than 85 per cent. of the cars which composed said train had their brakes used and operated by the engineer of the locomotive drawing the train.

The record discloses that the movement which is alleged to have violated the order of the Commission began at a part of the yards known as "north yard" near Thirty-Fourth street and continued on a side track for 2,323 feet to a point where the side track crossed the main track. The cars were stopped for the opening of the switch before crossing over the main track and again after they had crossed over while the switch was closed. They had traveled 15½ feet on the main track in crossing it. They then proceeded on the side track to Twenty-Fifth street. There the engine was uncoupled to enable it to switch a car on a side track; the car not being one of the thirteen. The engine returned, was coupled to the thirteen cars, and moved to Twenty-Second street. The total distance traveled was about a mile and a half. There are numerous industries located along or near this line of track which are served by it for the switching of their cars.

There is a dispute in the evidence as to whether eight of the thirteen cars were set out at Twenty-Fifth street and only the remaining five continued to Twenty-Second street. There was evidence from which the trial judge might have found that these eight cars were cut out at Twenty-Fifth street.

While various parts were designated by different names, this was, in fact, a single yard within which the cars were moved. They were moved without train orders under yard rules and under the direction of the yardmaster and crew. Seven of the thirteen cars were obtained in breaking up train 83, two from breaking up train 81, one from the repair track, and one was for an industry. During this movement, they never exceeded a speed of ten miles an hour. The engine was a switch engine, and it was backing.

No passenger trains are operated through this yard or on this division of the railroad. South-bound freight trains are broken up at the north end of the yard and do not pass through the yard, and north-bound freight trains are assembled throughout the yard and moved on the main track, but with the air connected up. Five paved streets were crossed at grade during the movement in question, all being protected by crossing signals and flashlights.

The sole question on this appeal is whether the trial court erred in holding that the above-described movement constituted a switching movement and not a train movement.

Transfer movements of cars by switch engines in charge of switching crews may come within the provisions of the order here in question under certain circumstances. In the case of United States v. Erie R. Co., 237 U. S. 402–407, 35 S. Ct. 621, 624, 59 L. Ed. 1019, the Supreme Court said: "As the context shows, a train in the sense intended consists of an engine and cars which have been assembled and coupled together for a run or trip along the road. When a train is thus made up and is proceeding on its journey it is within the operation of the air-brake provision. But it is otherwise with the various movements in railroad yards whereby cars are assembled and coupled into outgoing trains, *and whereby incoming trains which have completed their run are broken up. These are not train movements, but mere switching operations, and so are not within the air-brake provision."* (Italics ours.)

No case has been before the Supreme Court which more closely approaches the instant case, so far as the facts are concerned, than Louisville & Jeffersonville Bridge Co. v. United States, 249 U. S. 534, 39 S. Ct. 355, 356, 63 L. Ed. 757. In that case a movement of twenty-six cars from one railway terminal to another, without air brake connection and partly over main line track, crossing both city streets and the main track of another railroad, was held to be more than a switching movement and to have constituted a violation of the order of the Commission. The court said: "The work done with the cars, as described, was not a sorting, or selecting, or classifying of them, involving coupling and uncoupling and the movement of one or a few at a time for short distances, but was a transfer of the 26 cars as a unit from one terminal into that of another company for delivery,

without uncoupling or switching out a single car, and it cannot therefore with propriety be called a switching movement."

The facts of the instant case are distinguishable from the case just cited, as well as many of the other cases cited in appellant's brief, in that the movement was entirely within a single yard (the yard being one devoted exclusively to movements of freight cars), and was on side tracks, except for crossing the main track at one point. Applying to the facts of the instant case the test laid down by the Supreme Court, "the essential nature of the work done," we believe the District Court might properly have found that the movement in question was a switching movement.

Affirmed.